IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MOSES ROBINSON, AIS #206225, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 1:17-CV-00075-WS-MU ) |
| JEFFERSON DUNN, et al., | ) ) |
| Defendants. | ) ) ) |

## DECLARATION OF MANUEL POUPARINAS, M.D.

I, MANUEL POUPARINAS, M.D., pursuant to 28 U.S.C. § 1746, hereby make the following Declaration under penalty of perjury, declare that the statements made below are true, and state:

1. My name is Dr. Manuel Pouparinas. I am over the age of nineteen (19) years and have personal knowledge of the information contained in this declaration.

2. I have been a licensed physician in Alabama since July of 2005. I am licensed to practice medicine in both Alabama and Florida. Since May of 2017, I have served as the Medical Director for Holman Correctional Facility ("Holman") in Atmore, Alabama.

3. In my role as the site medical director at Holman, I am generally familiar with Moses Robinson ("Mr. Robinson"), an inmate who is currently incarcerated at Holman. A true and correct copy of the relevant excerpts from Mr. Robinson's medical records is attached as Exhibit "A" to the declaration of Kimberly McCants. I have reviewed Mr. Robinson's relevant medical records, and my statements below include specific citations to the Bates-labels affixed to the pertinent portions of Mr. Robinson's medical records.

4.      I received and reviewed a copy of the Complaint that Mr. Robinson filed in this lawsuit. It is my understanding that Mr. Robinson alleges that that Holman medical staff provided him with inadequate medical care following an altercation on November 9, 2016, with members of the correctional emergency response team ("CERT"). This allegation is incorrect and unfounded. I deny Mr. Robinson's allegation entirely.

5.      There can be no question that Mr. Robinson received appropriate medical care following the November 9, 2016, altercation. (COR012-025). Moreover, my review of Mr. Robinson's medical records confirmed that members of the Holman medical staff offered him additional care on multiple occasions following that altercation, but he refused the care. (COR013, COR020-023).

6.      To be clear, a member of the Holman nursing staff saw Mr. Robinson without undue delay on the very same morning as the altercation about which he complains, i.e. on November 9, 2016. (COR014). Mr. Robinson's only concern at that time related to discomfort in his elbow. (COR014). The nurse assessed Mr. Robinson on November 9, 2016, and discovered a 2.5 cm laceration under his left eye and a 2 cm abrasion on his left elbow. (COR014). The nurse's November 9, 2016, assessment confirmed that Mr. Robinson's vital signs were normal at that time. (COR014). On November 9, 2016, the nurse appropriately treated Mr. Robinson, including applying steri strips to the laceration below his left eye. (COR014).

7.      Following the nurse's assessment on November 9, 2016, the security staff for the Alabama Department of Corrections ("ADOC") placed Mr. Robinson in restrictive housing, i.e. segregation. (COR024-025). The policy for the Holman nursing staff requires members of the staff to routinely round through the restrictive housing unit and visually check on the inmates

housed there. During the course of the rounds, the nurses visually assess the inmates' conditions, ask how the inmates are doing, and administer any medications prescribed for the inmates. The nurses will also provide inmate request slips or medical grievance forms if requested by an inmate. If a nurse perceives any indication that an inmate is experiencing a medical emergency or requires immediate medical attention, the nurse is instructed and trained to take the appropriate steps to ensure the inmate received the necessary medical care without undue delay.

8. Members of the Holman nursing staff routinely checked on Mr. Robinson during the course of their segregation rounds while he remained housed in restrictive housing. (COR024-025). There is no indication that Mr. Robinson ever voiced any concern or complaint to the nurses completing the segregation rounds that he received inadequate medical care following the November 9, 2016, altercation or required additional care. (COR024-025). If Mr. Robinson had expressed such a concern or complaint, or if the nurses had seen any indication that Mr. Robinson required additional care, I am confident that they would have ensured that he received the necessary care.

9. While housed in restrictive housing, Mr. Robinson submitted a sick call request slip on November 14, 2016, voicing concerns of discomfort and bleeding from the laceration below his left eye. (COR013). The Holman nursing staff scheduled Mr. Robinson for the November 14, 2016, sick call. (COR013). However, Mr. Robinson refused to attend the November 14, 2016, sick call appointment. (COR013).

10. After November 14, 2016, Mr. Robinson requested and received medical care from members of the Holman medical staff on a variety of occasions, (COR007-012), although he refused the care on certain occasions. (COR020-023). However, to be clear, Mr. Robinson's requests for medical care after November 14, 2016, did not relate to the November 9, 2016,

3

altercation. (COR009-012). After refusing to attend the sick call appointment scheduled in response to his November 14, 2016, sick call request, Mr. Robinson never voiced any concerns regarding the medical care provided following the November 9, 2016, altercation or requested additional care with respect to the laceration and abrasion related to the altercation. (COR001-026). Moreover, on the occasions when members of the Holman medical staff saw Mr. Robinson following the November 9, 2016, altercation, they did not detect any indications that he required additional care related to that incident. (COR003-012, COR024-025).

11. After reviewing Mr. Robinson's circumstances, I am confident that he received an appropriate level of treatment. Mr. Robinson's allegation that on any occasion he failed to receive access to the medical services provided by the Holman medical staff is false. There is no reason to conclude that the course of treatment provided to Mr. Robinson was inappropriate in any way or that the conduct of the Holman medical staff, including the nurses, fell below the standard of care of that provided by other similarly situated medical professionals. In light of this course of treatment, my professional medical opinion is that the Holman medical staff acted appropriately in all respects.

12. Based upon my review of Mr. Robinson's medical records, I can state to a degree of medical certainty that the members of the medical staff at Holman fully satisfied the standard of care owed by them within the State of Alabama. I found no indications or objective data of any kind suggesting that Mr. Robinson's condition changed, worsened, or declined in any way as a result of the care he received during his incarceration at Holman.

I declare under penalty of perjury that the foregoing is true and correct. I understand that a false statement in this Declaration will subject me to penalties for perjury.

Date: 2/28/18

Manuel Pouparinas, M.D.

4